Wood, J.
The facts, from inspection of the record, appear to be these : The plaintiff in error was indicted, and, at the July term of the court of common pleas, a. d. 1840, he was tried and convicted on the second count of an indictment, framed under the provisions of sections 1, 2, and 3, of the act passed January 27, 1810, entitled “an act to prohibit the issuing and circulation of unauthorized bank paper.” Swan’s Stat. 136.
Section 1 enacts : “ That if any person shall, within this state, act as an officer, servant, agent, or trustee to any bank or moneyed association coming within the description contained in section 2 of this act, except a bank incorporated by a law of this state, he shall, for every such offense, forfeit and pay the sum of $1,000.”
Section 2 provides : “ That every company or association that shall lend money, and shall issue, by their officer or officers, or by any other person or persons, bonds, notes, or bills, payable to bearer, or payable to order, and indorsed in blank, or use other shift or device whereby the bonds, notes, or bills, given by such company or association, or on their behalf, pass or circulate by delivery, shall be taken and deemed a bank within this act.”
Section 3 is in these words : “ That every person who shall act as a president, cashier, clerk, or director to any such bank, or shall in any respect assist in the discounting of paper, or lending money for such bank, or in paying out or receiving money for such bank, or in any manner intermeddle, *for the benefit of such bank, with its concerns ; and every person whose handwriting shall appear on the bond, bill, note, or contract of such bank, whether as the drawer thereof, or witness, or payee and indorser, shall be deemed and taken an officer of said bank within the meaning of this act.”
The count, on which the conviction was had, is of the tenor following :
“And the jurors aforesaid, on their oaths, do further present that the said Wilson N. Brown, on March 1, 1840, with force and arms, in the county aforesaid, acted as an officer of a bank not incorporated by law, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.”
The defendant was sentenced to pay a fine of $1,000, and to stand committed until the fine and costs were paid.
A bill of exceptions was taken on the trial, from which it appears that, after the evidence was closed, the counsel for the ac *239 cused prayed the court to instruct the jury that, under said count, they could not convict the defendant unless they found he exorcised the office therein mentioned before or on March 1, 1840, the only day named in that count; but the court, on the contrary, instructed the jury it was sufficient to convict the defendant if they found such office had been exercised on or before March 21, 1840, the day on which the indictment was found. To this charge of the court an exception was taken, and is now assigned for error. It seems to us, however, the court were perfectly right in their view of the law, in relation to the day laid, and that the instruction given is sustained by the authorities. In a late and most excellent work on criminal evidence (Roscoo’s Criminal Evidence, 100), under the head of Averments as to Time, it is laid down that aD indictment not alleging any time when the offense was committed, is bad; but, when laid, it is unnecessary to prove the particular time as laid, unless the time be ^material. Thus, in treason, if the overt acts be laid on one certain day, evidence of them after that day, is admissible.
The court were also asked to instruct the jury, that the defendant could not be convicted, unless the notes put in circulation purported to be the notes of the association to which the defendant belonged, and not the notes of some other bank or association. This instruction was refused; but the court charged that it made no difference by whom the notes were drawn, whether by persons within the state or without it, or what shift or devise was resorted to, to evade the law, if the association, or individuals composing the association, wrote their names upon their bills, in such manner as to make it their debt, binding them to redeem it, and gave it credit, by such signature, as money or currency. To this instruction an exception was taken, and is also assigned for error. We do not, however, perceive in it anything erroneous. The act purports, from its title, and such is the essence of its provisions, to prohibit the issuing and circulating of unauthorized bank paper. It is in the three first sections, under which the indictment is framed, directed against persons who act as officers of unincorporated associations, either in this state or elsewhere, if the office is exercised here. It was not necessary to a conviction, that the person charged as the officer of such unincorporated institution, should, in fact, be found by the jury to have issued notes of the company to which he belonged, or for which he was *240 notoriously exorcising the office. The language of the act is broad : “That every company or association, etc., that shall, by their officer or officers, or by any other person or persons, etc., lend money, and issue bonds, notes, etc., shall be deemed a bank within this act; and every person who shall act as president, cashier, etc., or shall, in any way, assist in lending, paying out, or receiving money for such bank, shall be deemed and taken an officer of such bank, within the meaning of this act.” If, therefore, he act for any such association, in any capacity, as an agent, or his handwriting appear oh the notes, or if he intermeddle with its concerns, for its benefit, he is brought within the energies of the law, and *the court, in their instructions, appear only to have enumerated the acts which this statute defines as violations of its provisions.
The court were also asked to instruct the jury, that they could not convict the defendant on said count, unless the prosecution proved that tho association, acting as a bank, and for whom the defendant was an officer, had not been incorporated; but the court on this point charged that the jury should presume the association not incorporated, unless the contrary was shown by the defendant. An exception was, in like manner, taken to this part of the charge; and it is the only point, in our view, of doubtful or difficult solution. It is a general rule that the material averments in the indictment must be proved by the prosecution ; but there are few general rules without exceptions. In England, it would, under a like statute, be indispensable for the prosecution to prove a similar’ averment, because all acts of incorporation, whether emanating from parliament, or charters granted by the king, are private, and no one is bound to notice them, unless they are pleaded; but here it is otherwise. All statutes are printed by authority, and, though local or special, are, nevertheless, public acts, of which courts of justice, ex officio, take notice. On the trial, therefore, when the prosecution proved that the defendant acted as the officer of a company or association, if it existed in this state, the court and jury, without the introduction of testimony, from their presumptive knowledge of the law, a public law, would be within the legitimate exercise of their functions, in assuming that an unchartered association was so. Such averment is, therefore, proved by a public law. If, however, the association for whom the defendant exercised the office, existed elsewhere than iu *241 Ohio, the rule would not hold. The private acts or statutes of other states must be private in this. The indictment in this case .is general. It charges the defendant with acting as the officer of 'bank; but whether the company existed in this state, or elsewhere, does not appear; it is left to be supplied by the proof on the part of the prosecution. The statute gives this general form of the indictment, *and this court, in the case of Noah Lougee v. The State, at the last term, held it sufficient. Ante, 68.
If the association or bank for whom the defendant exercised tho office, therefore, was out of the state, the charge that the prosecution was not bound to prove it unincorporated, was erroneous; but this does not appear by the bill of exceptions, and it should be presumed the association existed in this state, on the principle that every court of general jurisdiction is presumed not to err until the error is pointed out.
Another, and the last error assigned, is, that the court directed the prisoner, the plaintiff in error, to stand committed until the fine and costs were paid. It is the opinion of a majority of the court, that the court below, in this, exceeded the authority vested in it by law. When common law jurisdiction is entertained, and courts proceed according to its course, this power exists; but when offenses are statutory, punishments regulated by statute, and no such authority of commitment is declared, it is a power not conferred, does not exist, and can not be exercised; though it is equally clear, the court, after sentence, may direct the detention of,a prisoner until he can be charged in execution. But commitment until the fine and costs are paid, is an addition to the punishment prescribed by law for the offense, and therefore illegal, and the judgment of the court, quoad hoc, must be reversed.
Judgment accordingly.